[Crim. No. 2931. First Dist., Div. One. Dec. 4, 1953.]

THE PEOPLE, Respondent, v. ENOS WILLIAMS, SR., Appellant.

C. L. Shinn for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Defendant Enos Williams has appealed from the judgment entered upon his conviction of a violation of section 11500 of the Health and Safety Code (possession of heroin) and from the order denying a new trial. One Jack Treasure, tried at the same time upon the same charge, admitted possession, was convicted, and has not appealed. The case was tried before the court without a jury.

The sole question is whether the evidence supports the verdict.

There was substantial evidence to the effect that Williams and Treasure were in a room about 10 feet by 14 feet in size. It contained a bed, a dresser and a table, with a wash basin in one corner. The table was against the wall, about 4 feet to the left of the door, and Williams was standing at the table. Upon the table, in plain view, there were 8 bindles of heroin, 6 small pieces of paper, a can containing baking powder with a soda content, 2 eyedroppers in a package, a needle wrapped in cellophane; and in Williams' pocket another hypodermic needle. As the officers entered, Treasure ran to the wash basin. Immediate inspection disclosed a fingerstall containing 18 grains of heroin in the basin.

Treasure said to the officers at the time, ''We have been here for several days,'' inferentially referring to himself and Williams, not to himself and wife, for she had not been in that room. She was serving a jail sentence of several months. Williams, present in the small room when the quoted statement was made, remained silent; said nothing to negative occupancy of the room by him. The landlord told the officers, just before they entered, that the ''occupants'' were then in the room.*

Treasure, in his testimony, explained the use of the eyedropper and the hypodermic needle when making an intravenous injection. The state chemist testified that milk sugar is customarily used in cutting heroin but that sometimes a baking soda mixture is used.

Williams did not take the witness stand.

---

*This hearsay testimony was competent because given without objection, in response to questions asked by Williams' counsel upon cross-examination of one of the officers.

The evidence of occupancy, the open display of the bindles of heroin and other articles used in the preparation and application of narcotics, and other circumstances including the presence of the hypodermic needle upon his person, with the inferences which reasonably may be drawn from such evidence, support an implied finding that Williams had physical control with intent to exercise control of the heroin, including *"knowledge of the presence of the object* as embraced within the concept of 'physical control with the intent to exercise such control,' which constitutes the 'possession' denounced by the statute." (The basic element of the offense as defined in *People* v. *Gory,* 28 Cal.2d 450, 455-456 [170 P.2d 433].) We conclude that his conviction of possession, as charged, is supported by the evidence.*

The judgment and the order are affirmed.

Peters, P. J., and Bray, J., concurred.

---

*The following decisions furnish adequate exposition of the pertinent principles of law and apply them to varying sets of similar circumstances which support conviction of possession as denounced by the statute: *People* v. *Charley Quong,* 5 Cal.App.2d 137, 140-141 [42 P.2d 386]; *People* v. *Rodrigues,* 25 Cal.App.2d 393 [77 P.2d 503]; *People* v. *Graves,* 84 Cal. App.2d 531, 534-535 [191 P.2d 32]; *People* v. *Hardeman,* 94 Cal.App.2d 51, 52-54 [210 P.2d 283]; *People* v. *Watkins,* 96 Cal.App.2d 74, 77 [214 P.2d 414]; *People* v. *Torres,* 98 Cal.App.2d 189, 193 [219 P.2d 480]; *People* v. *Rumley,* 100 Cal.App.2d 6, 9-10 [222 P.2d 913]; *People* v. *Foster,* 115 Cal.App.2d 866, 868-869 [253 P.2d 50].