[Crim. No. 3941.   Second Dist., Div. Three.   Mar. 27, 1946.]

THE PEOPLE, Respondent, v. THOMAS RICHARD SALO,
Appellant.

Paul Angelillo for Appellant.

Robert W. Kenny, Attorney General, and L. G. Campbell, Deputy Attorney General, for Respondent.

WOOD, J.—Defendant was convicted, in a jury trial, of the crime of violation of section 11160 of the Health and Safety Code, a felony, in that on February 3, 1945, he unlawfully had in his possession flowering tops and leaves of Indian Hemp (cannabis sativa). He appeals from the judgment and the order denying his motion for a new trial. He contends that the evidence was insufficient, that there was misconduct by the district attorney, that the court did not protect his rights, and that certain evidence was received erroneously.

On February 3, 1945, about 12:30 p. m., two officers from the State Narcotic Bureau, who were in a parked automobile across the street from a liquor store at 861 East Jefferson Boulevard, observed the defendant, on several occasions while they were there, step out of the store, look around and step back into the store. The officers returned about 2:30 p. m., accompanied by three other officers, and parked their automobile about a block from the store and remained therein. Soon thereafter an automobile, in which there were two Negro men, was parked in front of the officers' automobile about 100 feet

from the store. When one of those men went into the store, Officer Beckner also entered and saw defendant back of the counter, near the cash register, talking to the man. After being in the store about two minutes, the officer returned to his automobile. When the man, who had gone into the store, returned to his automobile and was about to drive away, Officer Beckner drove his automobile alongside the other automobile and stopped. Then Officers Rappattoni and Duede went to the other automobile, and when Officer Duede opened the right front door thereof, a paper bag containing an ounce or an ounce and a half of marihuana fell upon the running board. The five officers then took the two men into the store, and conducted a search of the premises in the presence of defendant, the only other person in the store. The salesroom of the store was at the front of the building. Adjoining that room and back of it there was a storeroom. A bedroom and kitchen adjoined the rear of the storeroom. In the storeroom, on top of a stack of beer cases, extending about to the ceiling, Officer Beckner found a Blue Ribbon beer carton in which there was a large paper bag containing 39 small paper bags in each of which there was an ounce or an ounce and a half of marihuana. On the bottoms of many of the 39 bags there was a stamped number, "021155," which same number was also on the bottom of the bag of marihuana which fell upon the running board of the automobile when the right front door was opened.

Officer Beckner testified that when he told defendant they were going to search for marihuana defendant said that none was there; that after it was found the officer said to him, "Isn't this marihuana?", and he said "Yes,"—that a Negro man had come in Wednesday and asked him to keep it until he returned; that later defendant said that a Negro man and a Mexican boy brought it in, that he did not know their names, but he knew who they were. He also testified that defendant said that he knew it was marihuana and that is why he hid it; that his sister owned the store; that he rented the place for her; and that he frequently stayed there all night.

Officer Rappattoni testified that, at the police station in the presence of defendant and others, he turned the pockets of defendant's leather jacket inside out, gathered the debris from them on a piece of paper, placed the paper and its contents in a sealed envelope, marked the envelope "Debris from

Salo,'' and delivered it to the property clerk of the police department.

It was stipulated that a police officer, assigned to the investigation bureau as a chemist, whose duties included the analysis of samples to determine whether they contained marihuana, was qualified to testify as a chemist. He testified that the material in the 39 bags was Indian hemp or cannabis sativa, commonly known as marihuana; that the material in the envelope, marked ''Debris from Salo,'' consisted of a trace of marihuana and a combination of lint and material that is commonly found in a pocket; and that the material in the bag, which fell on the running board when Officer Duede opened the automobile door, was cannabis sativa.

Defendant testified that he helped occasionally in the liquor store, but he had no management or control therein; that on Wednesday, preceding the Saturday when he was arrested, he was in the store while his sister, the owner of the store, was away, and at that time a Mexican and a colored boy came in, made a purchase, and the Mexican asked him if he would do him a favor by keeping a box of laundry, which he had under his arm, until Saturday, because they were going to Central Avenue; that he replied that he would do so with the understanding that they would return for it; that they left the box, which was a Blue Ribbon beer carton, and defendant put it on top of the beer cases in the storeroom; that those persons had been in the store on different occasions, but he did not know their names, other than knowing the Mexican by the name of Chuck; that he had not seen them since that day; that on February 3rd (Saturday) a colored boy by the name Bradley (the driver of the automobile that was parked in front of the officers' automobile) came in the store to buy beer, but did not get any; that while he was there a person (Officer Rappattoni) came in and asked for cigarettes, but did not get any; that when Officer Beckner came in later and asked him about marihuana, defendant said he did not know anything about it; that the officers searched the store, found the box which had been left there, and Officer Beckner put it on the floor and said, ''that is good old marihuana''; that defendant said, ''I don't know anything about it''; that he did not say that he knew it was marihuana; that the officers took him to the police station and searched the pockets of his jacket; that he never used marihuana and never had any in his pocket; that he told Officers Duede and Rappattoni that

the persons who left the box with him told him it was laundry, and he thought all the time that laundry was in that box; that he had kept packages on many occasions to accommodate customers of the store and customers of a clothes cleaning shop which was next door; and that there were many cartons of Blue Ribbon beer in the store.

Two witnesses, called on behalf of defendant, testified that they were in the liquor store on Wednesday when a colored boy and a Mexican man, carrying a Blue Ribbon beer box under his arm, came into the store; that the Mexican asked defendant if he would keep the box containing his laundry until Saturday, when he would return and pick it up; that defendant said he would keep it, and he took the box and put it in the storeroom.

Defendant's sister testified that she was the owner and manager of the liquor store, and had been such about eight years; that she did not employ or pay defendant, but he stayed there at times when she was away temporarily from the store; that she was away from the store during the afternoon of February 3rd, and defendant was taking care of the store at that time; that it was a custom of the store to keep packages for its customers and for the cleaning shop next door; that she had never seen the box in which the marihuana was found; that, as far as she knew, no one in the store had had any marihuana; that her store sold Blue Ribbon beer, and it was delivered to the store in boxes of the same kind as that in which the marihuana was found; and that defendant did not live at the store, but lived at their father's house on Hoover Avenue.

Officers Beckner and Rappattoni testified, in rebuttal, that defendant had never said to either of them or in their presence that he was under the impression that the box which was left by the Mexican was a box of laundry; and that the first time they had heard about the laundry was when the defendant testified at the trial.

Appellant's argument, in support of his contention that the evidence was insufficient to sustain the conviction, is in part that the evidence did not show he was the owner, lessee, or tenant of the premises, or that he used it or considered it his home. There was evidence that he rented the place for his sister, that he frequently stayed there all night, and that on many occasions he was in sole charge of the store. Even though he may not have occupied the premises in any

of the capacities referred to by appellant, the circumstances as to his occupancy thereof and all the other circumstances, as shown by the evidence, were sufficient to support the judgment.

■ Appellant asserts misconduct on the part of the district attorney in that during his cross-examination of defendant's sister he asked her if she knew that the officers found four new automobile tires in her store. The trial judge overruled defendant's objection to the question, stating that the question was proper in view of her testimony that customers left things there. The charge of misconduct is not sustained.

■ It is asserted further that there was misconduct by the district attorney by reason of the fact he asked an officer, who was testifying, if he was referring to a certain exhibit for identification when he said the bag was found on the Negro who was in the parked automobile. The officer answered in the affirmative, and said further that it was pointed out to defendant that some of the 39 bags found in the store had the same number on them that appeared on the bag found in the possession of that man. His argument is that the question and answer injected extraneous matter into the proceeding. The charge of misconduct is not sustained.

■ He also contends that the district attorney was guilty of further misconduct. While counsel for defendant was cross-examining a witness, she read from a transcript of the preliminary examination. The deputy district attorney, upon redirect examination, asked the witness to read a few questions in advance of the part read by counsel for defendant. Thereupon counsel for defendant asked him if he was going to impeach his own witness, and he replied: "I am going to impeach your integrity in trying to mislead the jury." A recital of the questions and answers read by each counsel, relative to the point then under consideration, would unnecessarily extend this opinion. Under the circumstances here, it appears that the statement did not constitute misconduct.

■ He asserts further misconduct in that the district attorney asked a witness if he knew the market value of marihuana, and if he knew how many marihuana cigarettes could be made from an ounce or an ounce and a half of marihuana. The court sustained objections to those questions. The deputy district attorney stated that the purpose of the questions was to show the improbability of anyone leaving a package of that value there. The charge of misconduct is not sustained.

Furthermore, with respect to the above contentions as to misconduct, counsel for defendant did not assign the statements as misconduct or ask the court to instruct the jury to disregard them.

█ Appellant asserts that the court did not protect his rights in four instances, as follows: (1) When the court stated to his counsel that she should not have taken defendant's jacket, an exhibit in the case, out of the courtroom during the noon recess. (2) When the court stated to his counsel that she should proceed in the regular manner to prove what a witness said at the premilinary examination, the deputy district attorney having refused to stipulate that a certain part of the transcript was correct. (3) When the court told his counsel to direct her question to the witness and "never mind addressing the jury." (4) When the court said that a certain question asked by counsel for defendant was not proper cross-examination. It appears that such statements were made by the trial judge in directing an orderly course of the trial, and they do not indicate a failure to protect defendant's rights.

█ He also contends that it was error to receive in evidence the bag of marihuana which fell on the running board of the automobile, as above stated. That bag, which had been in the automobile of the person who had just come from the store, had the same six-digits number on it that appeared on some of the 39 bags found in the store. The bag was admissible, and the weight to be given it as evidence was for the jury to determine.

█ The further contention of appellant that the debris taken from defendant's jacket should not have been received in evidence is not sustained.

The judgment and order denying the motion for a new trial are affirmed.

Desmond, P. J., and Shinn, J., concurred.